TOM BOWEN, EMPLOYEE, Plaintiff-Appellee v. ABF FREIGHT SYSTEMS, INC., Successor-in-Interest to CAROLINA FREIGHT CARRIERS CORPORATION, SELF-INSURED (GAB Robins, Servicing Agent), EMPLOYER, Defendant-Appellant

No. COA05-1257

(Filed 5 September 2006)

## 1. Workers' Compensation— standard of review—seeking termination or suspension of compensation

The Industrial Commission did not apply an incorrect standard of review under N.C.G.S. § 97-18.1 in a workers' compensation case, because: (1) N.C.G.S. § 97-18.1 does not break down the hearing process into stages based upon the substance of the evidence to be considered; (2) contrary to defendant's assertion, nowhere in the statute does it indicate that the Commission shall consider the employee's refusal of treatment or rehabilitative services at the informal telephone hearing and any circumstances that may justify refusal at a subsequent formal hearing; and (3) defendant employer has the burden of establishing a basis for termination or suspension of compensation to support its Form 24 application, and whether a forecast of evidence is sufficient is a determination within the sound discretion of the Commission.

## 2. Workers' Compensation— compliance with vocational rehabilitation efforts—pursuing GED

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee complied with vocational rehabilitation efforts, because: (1) any failure to cooperate with pursuing a GED prior to the 26 April 2000 administrative order of the Commission requiring plaintiff to pursue his GED is not a basis for termination of compensation under N.C.G.S. § 97-25; and (2) there was competent evidence that plaintiff cooperated with pursuing his GED to the best of his ability after the 26 April 2000 administrative order, and defendant

does not contest the competency of the evidence establishing plaintiff's psychological difficulties.

### 3. Workers' Compensation— refusal to accept suitable employment—credibility—work limitations

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee did not unjustifiably refuse any suitable employment including a security job position, because: (1) the record reveals that the security job position had not been approved by a physician, and the educational requirements were too high for plaintiff to fulfill; (2) the job would require filling out reports every once in a while and required an education level of ten years which was beyond what plaintiff had achieved; (3) although a witness testified that he would have hired plaintiff for the security guard position but for plaintiff's lack of interest, the Commission is the sole judge of the credibility of witnesses and could properly have chosen to give little weight to the witness's testimony; (4) plaintiff's vocational evaluator testified that due to plaintiff's work limitations it would be difficult for him to obtain a job, and also plaintiff's aptitude test revealed his language skills are a third-grade level and math skills below a third-grade level; (5) plaintiff worked the previous fifteen years loading heavy freight and lacked the transferable vocational skills necessary for new work settings; and (6) plaintiff scheduled and then attended an interview for the only job recommended by his vocational counselor.

### 4. Workers' Compensation— total disability—work-related physical and mental conditions—suitable sedentary work

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee is totally disabled as a result of his work-related physical and mental conditions, because: (1) a doctor testified that plaintiff cannot work due to his physical and mental conditions; and (2) although plaintiff was cleared by a different doctor to perform sedentary work, there was no suitable employment available to plaintiff who is fifty-seven years old and only completed the seventh grade, who has no transferable vocational skills, and whose reading and writing skills are at the third-grade level.

### 5. Workers' Compensation— injury by accident—depression

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee suffered an in-

jury by accident resulting in depression, because: (1) a doctor testified that it was his opinion to a reasonable degree of psychiatric certainty that the vocational rehabilitative efforts were a stressor leading to plaintiff's depression; and (2) where a physician testifies that plaintiff's depression was caused by several stressors, one of them arising out of plaintiff's injury by accident, the fact that other stressors exist does not undermine a finding that the depression was causally related to the injury.

Appeal by defendant from opinion and award entered 12 May 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 April 2006.

*Hedrick Eatman Gardner & Kincheloe, L.L.P., by Neil P. Andrews and Jennifer S. Anderson, for defendant-appellant.*

*Patrick, Harper & Dixon L.L.P., by David W. Hood, and Leslie M. Yount for plaintiff-appellee.*

ELMORE, Judge.

Tom Bowen (plaintiff) was employed as a dockworker by Carolina Freight Carriers Corporation, a/k/a ABF Freight Systems, Inc. (defendant) beginning on 2 February 1995. Plaintiff injured his lower back while lifting materials in the course and scope of his employment. Defendant filed a Form 21 admitting the compensability of plaintiff's low back injury. Plaintiff was authorized to return to work on 12 June 1995. Plaintiff returned to work for two weeks, but on 27 June 1995 temporary total disability payments were reinstated for "necessary weeks."

An MRI revealed plaintiff had a large disc herniation at L3-4. Plaintiff also had a bulging disk at L5-S1, the site of a previous, non-work related injury. Dr. Russell T. Garland performed a diskectomy on plaintiff on 10 August 1995. An MRI showed that the L3-4 disc had re-herniated. Plaintiff consulted Dr. Kenneth E. Wood about his continued leg pain. Dr. Wood performed a laminectomy and foraminotomy at L3-4. Dr. Wood requested a second opinion with Dr. Robinson Hicks. Dr. Hicks performed a decompressive laminectomy at L3-4 with a fusion at L3 to L5. On 6 January 1998 Dr. Hicks released plaintiff at maximum medical improvement and assigned a 25% permanent partial disability rating to his back. Plaintiff received a functional capacity evaluation on 9 February 1998. According to this evaluation, plaintiff could work in a sedentary capacity.

On 22 September 1999 plaintiff filed a Form 33 requesting a hearing on his claim that he is permanently and totally disabled. Defendant began vocational rehabilitation efforts with plaintiff to assist him with finding sedentary work. Plaintiff met with Ms. Omega Autry (Ms. Autry) in October of 1999 to begin vocational rehabilitation. When Ms. Autry was on medical leave from her position, Ms. Priscilla Styers (Ms. Styers) took over in counseling plaintiff on his vocational rehabilitative efforts. Ms. Styers worked with plaintiff from 25 January 2000 through April of 2000. On 21 March 2000 Ms. Styers referred plaintiff to a job opening at Griffith Security. Plaintiff was interviewed by Doug Carter (Mr. Carter) at Griffith Security on 22 March 2000. Mr. Carter testified that he was aware of plaintiff's work restrictions and that plaintiff's work restrictions fit within the parameters of a security officer position that was available. He stated that he would have extended a job offer to plaintiff but for plaintiff's lack of interest.

On 24 March 2000 defendant filed a Form 24 application seeking to terminate plaintiff's wage compensation on the basis that he had failed to cooperate with vocational efforts. Plaintiff filed a response on 3 April 2000, and Special Deputy Commissioner Gina E. Cammarano entered an administrative order disapproving defendant's application. Defendant filed notice of appeal to the Full Commission from this order.

Plaintiff was examined by Dr. Thomas McKean (Dr. McKean), a board certified psychiatrist, on 17 April 2000. Dr. McKean diagnosed plaintiff with a depressive disorder, chronic pain syndrome, and an adjustment disorder. He stated that obtaining a GED would be difficult for plaintiff, if not impossible. However, Dr. McKean's diagnosis did not prohibit plaintiff from further vocational rehabilitation efforts.

On 15 May 2000 defendant filed a second Form 24 application seeking to terminate plaintiff's wage compensation and asserting that plaintiff has willfully refused to cooperate with vocational efforts. Plaintiff filed a response on 31 May 2000. Special Deputy Commissioner Ronnie E. Rowell entered an administrative order on 15 June 2000 disapproving defendant's Form 24 application. Defendant filed notice of appeal to the Full Commission from this order. On 30 August 2001 defendant filed a third Form 24 application seeking to terminate plaintiff's wage compensation. Defendant asserted that plaintiff had again refused to cooperate with vocational rehabilitation efforts. After plaintiff filed a response, Special Deputy Commissioner Myra L.

Griffin entered an order disapproving defendant's Form 24 application. Defendant filed notice of appeal to the Full Commission from this order as well.

Plaintiff's request for permanent and total disability was heard before Deputy Commissioner Chrystal Redding Stanback on 27 March 2002. In an opinion and award entered 5 May 2003, Deputy Commissioner Stanback determined that plaintiff had complied with vocational rehabilitation efforts and had not unjustifiably refused any suitable employment. Pursuant to this decision, plaintiff was awarded temporary total disability benefits for the remainder of his life or until further order of the Commission. Defendant appealed to the Full Commission. On 12 May 2005 the Commission issued an opinion and award affirming the decision of Deputy Commissioner Stanback with modifications. Defendant appeals from the final opinion and award of the Commission.

I.

In considering an appeal from a decision of the North Carolina Industrial Commission, this Court is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). A finding of fact is conclusive on appeal if supported by competent evidence, even where there is evidence to contradict the finding. *See Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). This Court may not weigh the evidence or evaluate the credibility of witnesses, as "the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Id.* at 680, 509 S.E.2d at 413.

II.

[1] Defendant challenges the standard of review applied by the Commission under N.C. Gen. Stat. § 97-18.1. Pursuant to section 97-18.1, the employer may file a Form 24 with the Commission seeking to terminate or suspend compensation for total disability. *Lewis v. Sonoco Prods. Co.*, 137 N.C. App. 61, 66, 526 S.E.2d 671, 674 (2000). Section 97-18.1 provides in relevant part:

(c) An employer seeking to terminate or suspend compensation . . . shall notify the employee and the employee's attorney of record in writing of its intent to do so on a form prescribed by the Commission. . . . This form shall contain the reasons for

the proposed termination or suspension of compensation, be supported by available documentation, and inform the employee of the employee's right to contest the termination or suspension by filing an objection in writing to the Commission within 14 days of the date the employer's notice is filed with the Commission or within such additional reasonable time as the Commission may allow.

(d) . . . If the employee files a timely objection to the employer's notice, the Commission shall conduct an informal hearing by telephone with the parties or their counsel. . . . The Commission shall issue a decision on the employer's application for termination of compensation within five days after completion of the informal hearing. The decision shall (i) approve the application, (ii) disapprove the application, or (iii) state that the Commission is unable to reach a decision on the application in an informal hearing, in which event the Commission shall schedule a formal hearing pursuant to G.S. 97-83 on the employer's application for termination of compensation.

N.C. Gen. Stat. § 97-18.1(c) and (d) (2005). Defendant's applications for termination of compensation are based upon, *inter alia*, plaintiff's refusal to cooperate with vocational rehabilitation. Section 97-25 of our General Statutes, which addresses the employee's cooperation with the employer's offers of medical treatment and rehabilitative services, provides in pertinent part:

The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal[.]

N.C. Gen. Stat. § 97-25 (2005).

Defendant contends that, under section 97-18.1, it need only *forecast* evidence of plaintiff's refusal at the informal hearing, and that the Commission may consider justification for the employee's refusal to cooperate only at the formal hearing. We disagree with both of defendant's contentions. Section 97-18.1 does not break down the hearing process into stages based upon the substance of the evidence to be considered. Nowhere in the statute does it indicate, as defend-

ant asserts, that the Commission shall consider the employee's refusal of treatment or rehabilitative services at the informal telephone hearing, and any circumstances that may justify refusal at a subsequent, formal hearing. Also, according to the plain language of section 97-18.1, the defendant-employer has the burden of establishing a basis for termination or suspension of compensation. N.C. Gen. Stat. § 97-18.1(c) (2005) (the application for termination submitted by the employer "shall contain the reasons for the proposed termination or suspension of compensation, [and] be supported by available documentation[.]"). And if the employee does not file a timely objection to contest the employer's application for termination or suspension, then the Commission may terminate or suspend compensation if there is a "sufficient" basis. N.C. Gen. Stat. § 97-18.1(d) (2005). While we express no opinion on what documentation submitted by the employer would be sufficient for termination or suspension of compensation, we note that the statute places the burden on the employer of providing reasons to support its Form 24 application. Whether a "forecast" of evidence is sufficient is a determination within the sound discretion of the Commission. Defendant's assignment of error is overruled.

### III.

[2] Next, defendant contends the Commission erred in concluding that plaintiff complied with vocational rehabilitation efforts. Defendant argues that the record does not contain competent evidence to support the finding that plaintiff cooperated with vocational rehabilitation. In particular, defendant asserts that plaintiff failed to put forth any effort in pursuing his GED. The competent evidence establishes that plaintiff refused to call to schedule GED placement testing and refused to enroll in GED basic skills classes at Cleveland Community College. Ms. Styers testified that she gave plaintiff the telephone number and asked him more than once to call and set up a time for the testing. When plaintiff failed to do this, Ms. Styers scheduled an appointment for plaintiff. Ms. Janice Neal (Ms. Neal), an instructor of basic education at Cleveland Community College, testified that plaintiff missed a scheduled appointment with her on 27 March 2000. She stated that plaintiff did not call to reschedule.

Foremost, we note that any failure to cooperate with pursuing a GED prior to the 26 April 2000 administrative order of the Commission requiring plaintiff to pursue his GED is not a basis for termination of compensation under section 97-25. *See* N.C. Gen. Stat. § 97-25 (2005) (refusal of employee to accept medical treatment or

rehabilitation "when ordered by the Industrial Commission" bars employee from further compensation until refusal ceases); *Maynor v. Sayles Biltmore Bleacheries*, 116 N.C. App. 485, 488-89, 448 S.E.2d 382, 384-85 (1994) (absent evidence that the plaintiff failed to cooperate with a vocational rehabilitation specialist *after* an order of the Commission requiring such cooperation, the defendant-employer failed to establish a violation of section 97-25).

Defendant also asserts that plaintiff made no attempt to obtain his GED after the 26 April 2000 administrative order. But there is competent evidence referenced by the Commission in its findings that plaintiff cooperated with pursuing his GED to the best of his ability, which was limited by several factors:

> 16. The first vocational counselor was Omegra Autry. Subsequent to a medical leave of absence, Ms. Autry was replaced by another counselor, Priscilla Styers. Plaintiff, who had not worked in more than two years, began to suffer from depression in association with his chronic back pain, and due to the demanding nature of the vocational rehabilitation assignments given him by Ms. Styers, who was more assertive and more aggressive than Ms. Autry. Plaintiff cooperated with vocational rehabilitation efforts to the best of his ability, considering his limited education, persistent and disabling back pain, and his depression. Ms. Styers insisted that the only way plaintiff could obtain a job was to get his GED, the pursuit of which made plaintiff very uncomfortable, considering his historical lack of success during his grade school education. Plaintiff could not bear the stress created by attending the GED classes and feared humiliation in the event that he failed them.

> 21. . . . After counseling plaintiff for eight months, Dr. McKean opined that because of plaintiff's depressive issues, chronic pain issues, learning disability and borderline mental functioning, plaintiff would not be able to obtain his GED based upon his mental issues. Dr. McKean further noted that pursuing a GED was not appropriate for plaintiff as it was a stressor that caused him major depression.

Defendant does not contest the competency of the evidence establishing plaintiff's psychological difficulties. Indeed, Dr. McKean stated that participating in a GED program would be difficult, if not impossible, for plaintiff. Defendant notes that Dr. McKean did not *prohibit* plaintiff's participation in a GED program. But it is not this

**BOWEN v. ABF FREIGHT SYS., INC.**

[179 N.C. App. 323 (2006)]

Court's role to make new findings of fact based upon the evidence; our review of a finding of fact entered by the Commission is to determine whether it is supported by competent evidence. *See Adams*, 349 N.C. at 681, 509 S.E.2d at 414.

The Commission entered the following finding summarizing the evidence of plaintiff's affirmative efforts at obtaining a job and participating in vocational rehabilitation:

> 22. Despite his chronic back pain and mental issues, plaintiff cooperated with vocational rehabilitative efforts. Plaintiff attended all vocational meetings, took a placement test for the GED, sought employment on his own by reviewing advertisements for work in the Shelby area and speaking to colleagues, completed sample job applications, got a criminal background check and paid for the same, completed job lead forms to the best of his ability, went to the Employment Security Commission to locate jobs and scheduled and attended the only job interview that the vocational counselor suggested.

Where any competent evidence exists to support a finding of the Commission, that finding is binding upon this Court. *See Deese*, 352 N.C. at 116, 530 S.E.2d at 553. Thus, even though there may be evidence from which a fact finder could determine plaintiff has failed to cooperate with vocational rehabilitation efforts, we must uphold the finding.

[3] Defendant also challenges the Commission's finding that plaintiff has not unjustifiably refused any suitable employment. Defendant contends that plaintiff violated section 97-32 of the General Statutes, which states:

> If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified.

N.C. Gen. Stat. § 97-32 (2005). The Commission entered a finding with respect to the Griffith Security position that plaintiff sought:

> 18. Most of the jobs located by vocational counselors assigned to plaintiff's claim were part-time positions, beyond plaintiff's education or that required a GED. A security guard position was located for plaintiff; however, the job required ten years of education, which the plaintiff lacked, and it was never approved

by a physician. The security job position was not suitable employment, and the plaintiff did not unjustifiably refuse such employment.

Defendant argues on appeal that the Commission's findings are erroneous because Mr. Carter of Griffith Security stated that he would have hired plaintiff for the security officer position but for plaintiff's lack of interest. Defendant contends that this evidence supports a finding that the Griffith Security job was suitable and that plaintiff constructively refused this suitable employment by sabotaging the interview. *See Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 709, 599 S.E.2d 508, 514 (2004) ("An employer need not show that the employee was specifically offered a job by some other employer in order to prove that the employee was capable of obtaining suitable employment."). The dispute between the parties here hinges on the question of whether the Griffith Security job was "suitable employment." In order to be "suitable," a job must be available to the employee and one that he is capable of performing. *Id.*

Contrary to defendant's assertion, the record contains competent evidence to support the finding that the Griffith Security job was not suitable employment. The record reveals that the position had not been approved by a physician, and the educational requirements were too high for plaintiff to fulfill. Specifically, plaintiff testified that the Griffith job would require filling out reports every once in a while and required an education level of 10 years, beyond what plaintiff had achieved. Defendant argues nonetheless that the Commission should have given more weight to the testimony of Mr. Carter. Mr. Carter stated that he would have extended an offer to plaintiff but for plaintiff's clear lack of interest. As noted *supra*, the Commission is the sole judge of credibility of witnesses and the weight of evidence presented. *See Adams*, 349 N.C. at 680, 509 S.E.2d at 413. The Commission could properly have chosen to give little weight to the testimony of Mr. Carter. *See Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 288, 409 S.E.2d 103, 105 (1991) (Commission is sole judge of credibility of witnesses; it may reject part or all of testimony of a witness).

Defendant also contends that the Commission's finding on suitable employment should be reversed where it did not state whether there were reasonably available jobs if plaintiff was diligent in his efforts, citing *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 599 S.E.2d 508 (2004). We find this argument unpersuasive. In *Johnson*, the plaintiff's vocational rehabilitation counselor testified

that he found approximately twelve jobs that were within the plaintiff's physical and vocational restrictions. *Johnson*, 358 N.C. at 703, 599 S.E.2d at 510. The plaintiff's vocational counselor also testified that the plaintiff could have found a job if he had made diligent efforts. *Id.* at 709, 599 S.E.2d at 514. However, the Commission found that the plaintiff did not unjustifiably refuse suitable employment where he received no job offers. *Id.* at 710, 599 S.E.2d at 514-15. The Supreme Court stated that this finding was in contravention to the doctrine of constructive refusal of suitable employment. *Id.* The Court held that the Commission's conclusion on suitable employment must be reversed due to the lack of findings on whether the plaintiff would have been hired if he had diligently sought employment. *Id.*, 599 S.E.2d at 515.

Here, in contrast, plaintiff's vocational evaluator at Cleveland Vocational Industries testified that due to plaintiff's work limitations it would be difficult for him to obtain a job. Also, plaintiff's aptitude test revealed his language skills are at a third-grade level and math skills below a third-grade level. Plaintiff had worked the previous decade and a half in the heavy freight industry. The Commission found, in finding of fact number 17, that plaintiff has worked the previous fifteen years loading heavy freight and lacks the transferable vocational skills necessary for new work settings. The Commission's finding was supported by competent evidence.

Having determined that competent evidence supports the Commission's findings, we now consider whether the findings support its conclusions. The relevant conclusion of law states:

> 2. Plaintiff has complied with vocational rehabilitation efforts and with prior Orders of the Industrial Commission regarding the same and should not have his compensation ceased for noncompliance. Plaintiff has not unjustifiably refused any suitable employment. N.C.G.S. §§97-18.1, 97-25, 97-32.

This conclusion is supported by findings of fact 16, 17, 18, 21, and 22. The Commission found that the security officer position was not suitable employment because its educational requirements were too high and a physician had not approved the position for plaintiff. With respect to plaintiff's efforts at vocational rehabilitation, the Commission found that plaintiff was not able to obtain his GED due to a learning disability, depression, and chronic pain issues. Significantly, the Commission also found that plaintiff scheduled and then attended an

interview for the only job recommended by his vocational counselor. Defendant's challenge to the Commission's conclusion is overruled.

## IV.

[4] Next, defendant contends that the Commission erred in concluding that plaintiff is totally disabled as a result of his work-related physical and mental conditions. Defendant challenges the following findings in this regard:

> 25. Polly Metcalf, vocational coordinator at Cleveland Vocational Industries, opined that if "plaintiff were to go out and get a job, based on what they observed, it would be difficult for him to maintain the job" and stated that the results of the evaluation at their center would indicate a poor prognosis for success if plaintiff were employed.
>
> 26. Based upon the most competent evidence of record, plaintiff is unable to earn wages at this time. Plaintiff's treating physician, Dr. McKean, has indicated that plaintiff is unable to work at this time due to both physical and mental issues.

We determine that competent evidence supports these findings. Dr. McKean testified that plaintiff cannot work due to his physical and mental condition. Although plaintiff was cleared by a different physician to perform sedentary work, the record reveals that there was no suitable sedentary employment available to plaintiff: Plaintiff is 57 years old, and his formal education consists of completing only the seventh grade. Plaintiff has no transferable vocational skills, having worked the previous fifteen years as a dockworker loading heavy freight. Plaintiff's reading and writing skills are at the third-grade level. Given the evidence that plaintiff was not qualified for sedentary jobs due to their educational requirements, the Commission did not err in concluding that plaintiff was totally disabled. *See Peoples v. Cone Mills Corp.*, 316 N.C. 426, 442-44, 342 S.E.2d 798, 808-09 (1986) (fact that the plaintiff can perform sedentary work does not prevent Commission from awarding total disability where there is evidence that plaintiff is not qualified for sedentary jobs that might be available due to the plaintiff's lack of education and job skills).

## V.

[5] Finally, defendant contends that the Commission erred in finding and concluding that plaintiff suffered an injury by accident resulting in depression. Specifically, defendant argues that plaintiff failed to

establish his depression was causally related to his injury by accident. The Commission made a finding on this issue based upon the testimony of Dr. McKean:

> 20. Dr. Thomas McKean, psychiatrist, first saw the plaintiff on April 17, 2000, for suicidal thoughts and depression due to chronic pain and vocational efforts. Plaintiff's family history is positive for two family members committing suicide. Dr. McKean opined that vocational rehabilitative efforts were one of the major stressors that led to the plaintiff's clinical depression. Vocational rehabilitation continued to be an issue in plaintiff's life during the course of Dr. McKean's discussions with plaintiff. Dr. McKean's psychiatric treatment was necessary to effect a cure of provide relief or plaintiff's depressive symptoms.

The Commission then entered the following conclusion:

> 4. Plaintiff is entitled to reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative or pain management services at defendants' expense reasonably required to effect a cure, provide relief and lessen the period of disability. Dr. McKean's treatment of the plaintiff was reasonably designed to tend to effect a cure, provide needed relief from or lessen the period of disability associated therewith, therefore defendants shall pay all reasonable and necessary medical expenses incurred by the plaintiff as a result of the injury by accident and related depression. N.C.G.S. §§97-25; 97-2(19).

Defendant argues that the testimony of Dr. McKean is speculative and cannot support a finding that plaintiff's depression is causally related to his vocational rehabilitative efforts. Dr. McKean testified that depression is a multifactorial illness but that vocational rehabilitation is one of the stressors that led to plaintiff's clinical depression. Specifically, Dr. McKean stated that it was his opinion to a reasonable degree of psychiatric certainty that the vocational rehabilitative efforts were a stressor leading to plaintiff's depression. Defendant points out that Dr. McKean also stated, "I don't think a causal specific relationship could be applied here." But we must consider this statement in context; this Court may not determine a witness's entire testimony is speculative based upon a few selective excerpts. *See Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 573, 603 S.E.2d 552, 558 (2004) (Hudson, J., dissenting), *adopted per curiam*, 359 N.C. 403, 610 S.E.2d 374 (2005).

JAMES RIVER EQUIP., INC. v. THARPE'S EXCAVATING, INC.

[179 N.C. App. 336 (2006)]

Where a physician testifies that the plaintiff's depression was caused by several stressors, one of them arising out of the plaintiff's injury by accident, the fact that other stressors exist does not undermine a finding that the depression was causally related to the injury. *See Haponski v. Constructor's, Inc.*, 87 N.C. App. 95, 103, 360 S.E.2d 109, 113-14 (1987) (existence of other possible causes of the plaintiff's depression does not negate probative value of the physician's testimony that the depression was caused by the plaintiff's pain). Dr. McKean's testimony that plaintiff's vocational rehabilitation was a stressor causing plaintiff's depression supports the Commission's findings and conclusion.

We hold that the Commission's findings are supported by competent evidence and the findings justify the Commission's conclusions. As such, we affirm the opinion and award of the North Carolina Industrial Commission.

Affirmed.

Judges WYNN and McGEE concur.