WILLIAM DAVIS, Employee v. HARRAH'S CHEROKEE CASINO, Employer, LEGION INSURANCE COMPANY (Now assigned to the NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION), Carrier

No. 456A06

(Filed 25 January 2008)

## 1. Workers' Compensation— findings of fact—sufficiency of evidence

The Industrial Commission did not err in a workers' compensation case by its findings of fact 14 and 15 supporting the conclusion that plaintiff's ongoing disability and medical treatment were the result of a compensable injury, and that plaintiff's fall at home in November 2001 did not amount to an intervening event that broke the chain of causation from the original injury, because: (1) with regard to finding of fact 14, the surgical note quoted within the finding itself supports the final sentence, which determines that plaintiff's second surgery involved removal of scar tissue from the first surgery; (2) with regard to finding of fact 15, there was evidence in the record to support the Commission's more specific finding as to plaintiff's propensity to develop degenerative changes; and (3) the evidence recited above, as well as the portion of plaintiff's surgeon's testimony and records quoted in finding 14 itself, supports findings 14 and 15.

## 2. Workers' Compensation— conclusions of law—causation—intervening cause

The Industrial Commission did not err in a workers' compensation case by its conclusions of law numbers 3, 4 and 6 that plaintiff's ongoing disability and medical treatment were the result of a compensable injury, and that plaintiff's fall at home in November 2001 did not amount to an intervening event that broke the chain of causation from the original injury, because: (1) the finding that plaintiff injured his back moving a monitor from a slot machine at work, and required surgery in September 2001 as

a result, support the Commission's conclusions; (2) the finding that the original injury and surgery led to scar tissue and made him more prone to degenerative changes, which in turn necessitated the second surgery in April 2002, supports conclusions 3 and 4; (3) in light of these conclusions that plaintiff's medical treatments for his back, including both surgeries, as well as his ongoing disability resulted from his May 2001 injury at work, the award of benefits including all compensation for medical treatment and ongoing total disability was entirely appropriate; and (4) although defendants contend the Commission misapplied the legal principles of causation in conclusion number 6, the Commission addressed the issue of intervening cause since defendants raised it, but given conclusions 1, 3 and 4, conclusion 6 was simply unnecessary when the Commission properly found and concluded that plaintiff's injury in May 2001 is compensable and that all of plaintiff's medical treatments and ongoing disability have resulted therefrom.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 178 N.C. App. 605, 632 S.E.2d 576 (2006), affirming an opinion and award filed on 20 June 2005 by the North Carolina Industrial Commission. On 5 October 2006, the Supreme Court allowed defendants' petition for discretionary review of additional issues. Heard in the Supreme Court 15 February 2007.

*Law Offices of Lee and Smith, P.A., by D. Andrew Turman, for plaintiff-appellee.*

*Hedrick Eatman Gardner & Kincheloe, L.L.P., by Allen C. Smith, Andrew S. Culicerto, and Margaret M. Kingston, for defendant-appellants.*

*Sumwalt Law Firm, by Vernon Sumwalt, for the North Carolina Academy of Trial Lawyers, amicus curiae.*

HUDSON, Justice.

Defendant employer challenges the Industrial Commission's determination that plaintiff's ongoing disability and medical treatment were the result of a compensable injury. We hold that the Commission properly found and concluded that plaintiff's ongoing disability and medical treatment were related to and resulted from his compensable injury. We affirm the award.

**DAVIS v. HARRAH'S CHEROKEE CASINO**

[362 N.C. 133 (2008)]

In May 2001 plaintiff injured his back while removing a monitor from a slot machine at work. Initially, he sought treatment from his chiropractor, Dr. Guy Karcher, who referred plaintiff to a neurosurgeon, Jon M. Silver, M.D., in August of that year. On 7 September 2001, Dr. Silver performed a microlumbar discectomy. Although plaintiff returned to work in October 2001 because he was afraid of being fired if he did not, he continued to have back and leg pain. In early November 2001, plaintiff called Dr. Silver due to ongoing symptoms of pain, which were similar to those he had experienced before the surgery. Dr. Silver ordered an MRI, which was performed on 20 December 2001, and which showed scar tissue and degenerative changes. At a follow-up visit late in December 2001, plaintiff reported that he had felt significant pain in his back and legs since he fell at home in late November. Dr. Silver ordered more tests including a CAT scan performed on 2 April 2002, which revealed degenerative and "postoperative changes," and he performed another surgery later that month. Plaintiff was unable to return to work after the second surgery.

Eventually, Harrah's fired plaintiff for not returning to work. Defendants denied plaintiff's workers' compensation claim for medical treatment and ongoing disability in their Form 19 (report of employee's injury or occupational disease), by Form 61 ("Denial of Workers' Compensation Claim"), in their Form 33R (response to request for hearing), and in multiple assignments of error in the record on appeal. However, although defendants have brought forward assignments of error challenging the entire award to plaintiff, as they did not bring forward to the Court of Appeals any challenges to the compensability of the original work-related injury, those challenges are abandoned. Defendants contended that plaintiff's fall at home broke the chain of causation related to the original injury. The Commission found and concluded otherwise.

The Commission found as fact, *inter alia*, that as a result of plaintiff's original injury, he had "more of a propensity to develop degenerative changes at that level over time" and that he would have more difficulty recovering from any further injury. The Commission also found that any further injury would be "likely to result in worse symptoms" than if plaintiff had not had the surgery required by the previous work-related injury and that as of the date of the hearing, plaintiff remained totally disabled due to severe back pain radiating down his legs. Thus, the Commission concluded that plaintiff's ongoing pain and disability, as well as the April 2002 surgery and follow-

up treatment, were related to his compensable injury and awarded benefits accordingly. The Court of Appeals affirmed the award in a divided opinion.

The majority in the Court of Appeals upheld all but one of the Commission's factual findings, all of its conclusions of law, and its award, based on the overall determination that plaintiff's current medical condition and disability resulted from his injury at work. *Davis*, 178 N.C. App. at 609-16, 632 S.E.2d at 579-83. The majority also held that plaintiff's fall at home in November 2001 did not amount to an intervening event that broke the chain of causation from the original injury. *Id.* at 610, 632 S.E.2d at 580. The dissenter would have held that the critical findings of fact in favor of plaintiff were not supported by the medical evidence, and would have reversed the Commission. *Id.* at 616, 632 S.E.2d at 583. Defendants filed a notice of appeal on the basis of the dissenting opinion in the Court of Appeals, and we granted defendants' petition for discretionary review of additional issues.

[1] In their New Brief, defendants identify sections "I.-B" and "II" as being before this Court based upon the dissenting opinion in the Court of Appeals. Defendants frame these issues as follows:

> I.B. THE COURT OF APPEALS ERRED IN RELYING UPON HORNE [*Horne v. Universal Leaf Tobacco Processors*, 119 N.C. App. 682, 459 S.E.2d 797, *disc. rev. denied*, 342 N.C. 192, 463 S.E.2d 237 (1995)], AS THERE WAS NO COMPETENT EVIDENCE IN THE INSTANT CASE THAT THE INJURY FOLLOWING THE SLIP AND FALL WAS CAUSALLY RELATED TO THE COMPENSABLE INJURY OF MAY 2001.

> II. THE COURT OF APPEALS ERRED IN AFFIRMING THE FULL COMMISSION'S OPINION AND AWARD WHICH CONCLUDED THAT PLAINTIFF-APPELLEE'S SURGERY IN APRIL OF 2002 WAS CAUSALLY RELATED TO THE COMPENSABLE INJURY OF MAY 2001 WHERE NO MEDICAL EVIDENCE ESTABLISHED THE SLIP AND FALL INJURY PRECEDING THE SURGERY WAS AN AGGRAVATION OF THE COMPENSABLE INJURY.

In both of these sections of the brief defendants argue, in essence, that the evidence is insufficient to support the findings underpinning the award in favor of plaintiff, particularly the findings connecting plaintiff's second surgery and ongoing symptoms to the original com-

pensable injury. Although defendants discuss at some length testimony that would have supported different findings, they do not argue that any particular findings of the Commission were unsupported by the evidence. In both arguments I and II, defendants bring forward assignments of error to findings 4 (in part) and 14, 15, and 18. For purposes of our analysis, we consider the evidence in support of findings 14 and 15, which appear to be the primary focus of defendants' arguments here, as in the Court of Appeals. In pertinent part, these findings state:

> 14. While Dr. Silver opined at his deposition that the second surgery was primarily to correct degenerative changes, he did indicate that changes seen on the MRI relating to scarring and fibrosis around the nerve were related to plaintiff's first surgery. . . .[long quotation from surgical note omitted].

> It is clear from this description that in addition to the degenerative changes to plaintiff's ligamentous flavum, the second surgery involved removal of scar tissue from the first surgery.

> 15. As has already been found as fact [in finding 13] above, plaintiff's first surgery would have made him more prone to develop degenerative changes, specifically ligamentous changes. The ligamentum flavum Dr. Silvers [sic] removed is a primary spinal ligament, and was identified, along with the scarring, as a primary cause of the stenosis seen on the April 1, 2002, MRI.

The Workers' Compensation Act provides that the Industrial Commission is the sole judge of the credibility of the witnesses and the weight of the evidence. N.C.G.S. § 97-84,-85,-86 (2005); *Adams v. AVX Corp.*, 349 N.C. 676, 680-81, 509 S.E.2d 411, 413 (1998) (citing *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). We have repeatedly held that the Commission's findings of fact "are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." *E.g. Jones v. Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965) (per curiam). Further, "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (citation omitted); *accord Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 553 (2000). Appellate review

**DAVIS v. HARRAH'S CHEROKEE CASINO**

[362 N.C. 133 (2008)]

of an opinion and award from the Industrial Commission is generally limited to determining "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005) (citing *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986)).

After careful review, we conclude that the evidence fully supports these findings of fact. Referring to finding of fact 14, the surgical note quoted within the finding itself supports the final sentence, which determines that plaintiff's second surgery involved removal of scar tissue from the first surgery. The Court of Appeals noted that the finding contains extensive "recitations of Dr. Silver's testimony and written surgery notes," but that in light of the last sentence, the finding is "adequate." *Davis*, 178 N.C. App. at 612, 632 S.E.2d at 580. We agree with this analysis.

In finding 15, the Commission determined that plaintiff's first surgery made him more prone to develop degenerative changes, which in turn were a "primary cause" of the second surgery. The Court of Appeals first noted that finding 15 refers back to and relies upon finding 13, which was not challenged on appeal. *Id.* at 612, 632 S.E.2d at 581. The court then held that finding 15 was not supported by the evidence, to the extent it found that the plaintiff specifically (as opposed to "someone" in general) was more prone to develop degenerative changes. *Id.* This part of the court's analysis includes a misapplication of the standard of review on appeal, which we must address.

In his deposition, Dr. Silver testified that he saw plaintiff on 29 October 2001, for a regularly scheduled six-week followup visit after his discectomy. Dr. Silver allowed plaintiff to return to work so he would not lose his job, but advised him to avoid heavy lifting to the extent possible. Dr. Silver also explained that plaintiff called him on 7 November 2001, before his reported slip and fall at home, to report that he was experiencing pain "similar to that before surgery." In response to a question from plaintiff's counsel about whether "the first procedure that you performed, the discectomy" would "make someone more susceptible to injury from a fall," Dr. Silver responded in part:

> I think it would make people more—I think it does two things.

First, in someone that has what might otherwise be a relatively minor injury . . . having scar tissue in there . . . I think makes it more difficult for them to get over a strain type injury.

. . . .

The other thing it does is, by taking down part of the joint and by disrupting ligaments, there is also *more of a propensity to develop degenerative changes* at that level over time just as any injury to the joint space would be; a football injury or fall. So over time I think they are *more prone to develop degenerative changes*.

The long answer to your question is, yeah, I think there are two ways and the answer is yes. (Emphasis added.)

Dr. Silver's entire answer to this question specifically asking about the discectomy he performed on plaintiff was incorporated into finding of fact 13, which has not been challenged on appeal, and is thus binding. Later in his deposition, Dr. Silver answered the specific question, "Does Mr. Davis have a greater likelihood of continued degenerative changes . . . ?", by saying in part that plaintiff is "certainly . . . more prone to further and more rapid advanced degenerative changes." The Court of Appeals erred in its statement that "there is no evidence in the record to support the Commission's more specific finding as to plaintiff's propensity to develop degenerative changes." *Id.* at 612, 632 S.E.2d at 581. Because the evidence above unequivocally shows otherwise, we explicitly disavow this statement and hold that finding 15 is supported by the evidence when the standard of review is properly applied.

Taking the evidence in the light most favorable to plaintiff, as the decisions of this Court require, the Commission made the findings and reached the conclusions above. The evidence recited above, as well as the portion of Dr. Silver's testimony and records quoted in finding 14 itself, supports findings 14 and 15. In those findings, the Commission determined that the second surgery was necessitated by degenerative changes and scar tissue resulting from the original injury and first surgery.

[2] Because the findings of fact, including numbers 4, 14, 15 and 18, are thus conclusive, we turn to the arguments defendants have brought forward directed at the related conclusions of law. The critical conclusions of law are numbers 1, 3, 4 and 6, which read as follows:

1. On or about May 26, 2001, plaintiff sustained a specific traumatic incident, arising out of and in the course of his employment with Harrah's Cherokee Casino. As a consequence, he injured his lower back, sustaining a herniated disc. N.C. Gen. Stat. § 97-2(6).

. . . .

3. As a consequence of his back injury, plaintiff required medical treatment, including the surgery performed by Dr. Silver on September 7, 2001, and the second surgery, performed on April 22, 2002. Defendants are responsible for payment of all such reasonably necessary medical treatment incurred by plaintiff for the lower back injury, including said surgeries, and follow-up to those surgeries. N.C. Gen. Stat. §§ 97-2(19) and 97-25.

4. As a consequence of his back injury, plaintiff was unable to earn wages in any employment and was temporarily totally disabled from June 26, 2001, through October 31, 2001, and from December 27, 2001, and continuing until plaintiff is able to earn the same or greater wages as he was earning when first injured. Defendants are responsible for payment to plaintiff of wage loss compensation at the rate of $283.09 per week during this period. N.C. Gen. Stat. § 97-29.

. . . .

6. Also at issue is whether the fall that plaintiff suffered outside his home in late November or early December 2001 was an intervening causal event sufficient to bar plaintiff from further compensation. For this to be the case, any injury resulting from his fall would have to be entirely independent of the compensable injury. . . . The slip and fall on ice aggravated the earlier injury and the pain and medical consequences were a natural progression of the earlier injury.

As noted above, conclusion 1 has not been challenged on appeal, but 3, 4 and 6 have been assigned as error. In argument II, defendants contend that the findings above, based on Dr. Silver's testimony, do not support conclusions of law that the second surgery (conclusion 3) and plaintiff's resulting disability (conclusion 4) are related to the original injury.

We hold that the findings discussed above support the Commission's conclusions. Plaintiff injured his back moving a monitor from

a slot machine at work and required surgery in September 2001 as a result. The Commission found and concluded that this injury was compensable under the Workers' Compensation Act. The original injury and surgery led to scar tissue and made him more prone to degenerative changes, which in turn necessitated the second surgery in April 2002. Thus, conclusions 3 and 4 are fully supported by the Commission's findings. In light of these conclusions—that plaintiff's medical treatments for his back, including both surgeries, as well as his ongoing disability resulted from his May 2001 injury at work—the award of benefits including all compensation for medical treatment and ongoing total disability is entirely appropriate.

Defendants argue, as they did in the Court of Appeals, that the Commission and Court of Appeals misapplied the legal principles of causation to this workers' compensation case. This argument is directed at conclusion 6 quoted above. The majority in the Court of Appeals disagreed, noting that "uncontested findings" of fact 5 and 6 (pertaining to plaintiff's symptoms between early November 2001 and his second surgery in April 2002) support this conclusion. *Davis*, 178 N.C. App. at 610, 632 S.E.2d at 580. The Court of Appeals relied on its decision in *Horne* to justify the conclusion that aggravation of a primary injury is compensable unless due to an independent intervening event resulting from plaintiff's own intentional conduct. *Id.* (citing *Horne*, 119 N.C. App. at 685, 459 S.E.2d at 799). The dissenter agreed with the legal principles set forth in *Horne*, but did not agree that the medical evidence here established an aggravation of the original injury. *Id.* at 618, 632 S.E.2d at 584.

This issue is before this Court on discretionary review. Defendants state the issue in their new brief as follows:

I.A. THE COURT OF APPEALS ERRED IN RELYING UPON HORNE, AS THE HORNE COURT MISAPPLIED THE CAUSATION PRINCIPLES OF AGGRAVATION OF A COMPENSABLE INJURY.

We conclude that application of these principles is not necessary to the disposition of this case.

Here, the evidence supports the Commission's findings that the first surgery was necessitated by the work-related injury of May 2001 and that the second surgery and ongoing disability resulted directly from the original injury and first surgery. These findings, in turn, sup-

port the Commission's conclusions that defendants are responsible for payment for all "such reasonably necessary medical treatment incurred by plaintiff for the lower back injury, including said surgeries, and follow-up to those surgeries." We recognize that the Commission addressed the issue of intervening cause because defendants raised it, but given conclusions 1, 3 and 4, conclusion 6 is simply unnecessary. Neither the Commission nor the Court of Appeals needed to consider whether any intervening cause occurred because the Commission properly found and concluded that plaintiff's injury in May 2001 is compensable and that all of plaintiff's medical treatments and ongoing disability have resulted therefrom. In so finding and concluding, the Commission by implication declined to attribute causation to any intervening event.

For the reasons stated above, the opinion of the Court of Appeals affirming the Commission's opinion and award is modified and affirmed.

MODIFIED AND AFFIRMED.