LINDA WEATHERLY NALE, Plaintiff v. ETHAN ALLEN, and ST. PAUL TRAVELERS, Defendants

No. COA09-55

(Filed 1 September 2009)

**1. Appeal and Error— preservation of issues—failure to argue**

An assignment of error not argued in defendants' brief was deemed abandoned.

**2. Workers' Compensation— causation—expert testimony—speculation and conjecture**

The Industrial Commission erred in a workers' compensation case by finding that plaintiff's right knee injury was causally related to the compensable left knee injury where plaintiff's self-diagnosis was inadequate to establish medical causation and the expert medical testimony presented was insufficiently reliable to qualify as competent evidence on causation.

**3. Workers' Compensation— sufficiency of findings of fact—conflicting as a matter of law**

The Industrial Commission erred in a workers' compensation case by awarding plaintiff temporary total disability payments for a period of time and this issue is remanded to the Commission for further findings of fact. The Commission upon remand should determine the date plaintiff left the employ of defendant in North Carolina, where and when she worked in South Carolina, and the reason for her termination in South Carolina.

**4. Appeal and Error— preservation of issues—failure to argue**

Assignments of error that defendants failed to argue in their brief are deemed abandoned under N.C. R. App. P. 28(b)(6).

Appeal by defendants from an Opinion and Award filed 10 September 2008 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 June 2009.

*The Sumwalt Law Firm, by Vernon Sumwalt and Mark T. Sumwalt, for employee-plaintiff-appellee.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Jeremy T. Canipe and M. Duane Jones, for employer-carrier-defendant-appellants.*

STEELMAN, Judge.

Plaintiff was required to prove, by expert medical testimony, that her right knee injury was a direct and natural result of her compensable left knee injury. This causal link was not established by plaintiff's expert witness. As to defendant's second argument, there is a conflict in the findings of the Industrial Commission, and this matter is remanded for additional findings of fact.

## I. Factual and Procedural Background

In July 2005, Linda Weatherly Nale (plaintiff) was employed as an interior designer in Charlotte at Ethan Allen Interiors Inc. (Ethan Allen). Her duties included greeting people when they came to the store, going to clients' residences to deliver accessories, and picking up materials and supplies from the warehouse. Plaintiff was on her feet "quite a bit," and "would walk quite a ways around into the store."

On 14 July 2005, plaintiff was in the warehouse searching for fabric when her left foot became wedged in between boxes. She fell forward and twisted her left knee. Plaintiff continued working without reporting the incident. That weekend, plaintiff went on vacation, and her pain "continued to get worse . . . ." Plaintiff went to the emergency room upon her return to Charlotte.

On 26 July 2005, plaintiff went to Northcross Urgent Care in Huntersville complaining of left knee pain and a swollen, numb foot. Dr. Hal Armistead (Dr. Armistead) imposed work restrictions including wearing a splint, lifting no more than ten pounds, and no stooping, bending or twisting. The work restrictions were delivered to plaintiff's manager, Michelle Jones (Jones) that same day. Plaintiff continued to work. Over the next several months, plaintiff saw four different doctors seeking treatment for her left knee.

On 13 September 2005, Ethan Allen completed Industrial Commission (Commission) Form 19 reporting plaintiff's left knee injury. On 16 September 2005, Ethan Allen's carrier filed a Form 61 with the Commission denying the claim, pending further investigation and receipt of medical records from all treating physicians. On 21 October 2005, Ethan Allen's carrier filed another Form 61 denying the claim based on plaintiff's failure to execute a medical authorization sheet listing her physicians and their contact information.

On 29 November 2005, Dr. Christopher Bensen (Dr. Bensen), an orthopaedic surgeon, directed that plaintiff not work until 12 De-

cember 2005. On 19 December 2005, Dr. Scott L. Smith (Dr. Smith), who practiced with Dr. Bensen, placed plaintiff on work restrictions "with sedentary work only with no walking more than 15 minutes an hour and no bending, stooping, squatting, or kneeling." Plaintiff was further restricted from climbing stairs or ladders.

On 24 August 2006, plaintiff sought treatment from Dr. H. Del Schutte, Jr. (Dr. Schutte). Dr. Schutte recommended arthroscopic surgery on plaintiff's left knee. On 7 September 2006, Dr. Schutte performed a chondroplasty, shaving loose or frayed cartilage from her knee. Dr. Schutte's surgical note stated that plaintiff had "some injury to the cartilage and some fraying of her meniscus." Following surgery, plaintiff experienced a significant reduction in pain. Dr. Schutte encouraged her to be active, and she resumed running for exercise.

The Commission found that plaintiff voluntarily left her employment with Ethan Allen on 1 May 2006, drew unemployment compensation from that date, and returned to work on 28 December 2006. On 26 February 2007, plaintiff requested that her claim be assigned for hearing.

On 7 March 2007, plaintiff returned to Dr. Schutte complaining of pain in her left knee and that "her left knee needs to be lubricated." X-rays taken of her left knee revealed "medial wear and joint space narrowing in the medial aspect with some bone spurs." Dr. Schutte injected her left knee with steroids.

On 9 May 2007, plaintiff returned to Dr. Schutte, complaining of pain in her right knee. Earlier that week, plaintiff twisted her right knee and "felt a pop." Dr. Schutte administered a cortisone injection. The injection relieved the pain until she tried to get into her vehicle and felt another pop in her right knee. On 16 May 2007, plaintiff told Dr. Schutte that her right knee had "just started hurting a few weeks ago," and she thought "it [was] because her left knee had been hurting in the past." Plaintiff stated she had been placing more weight on her right knee.

On 26 June 2007, Dr. Schutte performed a chondroplasty and excision of plica on plaintiff's right knee. Plica is scar tissue on the inner lining of the capsule in the knee. Dr. Schutte also removed fluid from plaintiff's right knee. On 11 July 2007, Dr. Schutte opined that she had "a greater than 50% chance of requiring bilateral total knee anthroplasties in the future."

NALE v. ETHAN ALLEN

[199 N.C. App. 511 (2009)]

On 10 September 2008, the Commission filed an Opinion and Award ruling that plaintiff's left knee injury was a compensable injury, and plaintiff's right knee condition was causally related to her compensable left knee injury. The Commission awarded plaintiff total disability compensation for 241 days based on an average weekly wage of $770.97, a total of $17,695.60 pursuant to N.C. Gen. Stat. § 97-29. Past, present, and future medical expenses related to her left and right knee injuries were also awarded.

Defendants appeal.

## II.  Standard of Review

This Court's standard of review of an Opinion and Award of the Industrial Commission is "whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law." *Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997) (citing *Sidney v. Raleigh Paving & Patching*, 109 N.C. App. 254, 426 S.E.2d 424 (1993)). The Commission's findings of fact are conclusive on appeal if supported by competent evidence. This is true even if there is evidence to support a contrary finding. *Morrison v. Burlington Industries*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981) (citations omitted). "The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). In determining whether competent evidence supports the findings of fact, the evidence is to be viewed in the light most favorable to plaintiff. *Davis v. Harrah's Cherokee Casino*, 362 N.C. 133, 137, 655 S.E.2d 392, 395 (2008) (citations omitted). Plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence. *Id.*

## III.  Left Knee Injury

[1] Defendants assigned error to the Commission's award pertaining to plaintiff's left knee injury but have failed to argue the assignment of error in their brief. It is thus deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).

## IV.  Right Knee Injury Not Causally Related to Left Knee Injury

[2] In their first argument, defendants contend the Commission erred in finding that plaintiff's right knee injury was causally related to the compensable left knee injury. We agree.

The Worker's Compensation Act "was never intended to provide the equivalent of general accident or health insurance." *Vause v. Equipment Co.*, 233 N.C. 88, 92, 63 S.E.2d 173, 176 (1951). An injury is only compensable if it arises "out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6) (2007). Plaintiff bears the burden of proving each element of compensability. *Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003) (citing *Harvey v. Raleigh Police Dept.*, 96 N.C. App. 28, 35, 384 S.E.2d 549, 553, *disc. rev. denied*, 325 N.C. 706, 388 S.E.2d 454 (1989)). A subsequent injury is compensable if it is the direct and natural result of a compensable primary injury. As long as the primary injury is shown to have arisen out of and in the course of employment, then every natural consequence flowing from that injury likewise arises out of the employment. *Starr v. Paper Co.*, 8 N.C. App. 604, 611, 175 S.E.2d 342, 347 (1970) (quoting Larson's Workmen's Compensation Law § 13.00). The subsequent injury is not compensable if it is the result of an independent, intervening cause. "'An intervening cause is one occurring entirely independent of a prior cause. When a first cause produces a second cause that produces a result, the first cause is a cause of that result.'" *Cannon v. Goodyear Tire & Rubber Co.*, 171 N.C. App. 254, 260, 614 S.E.2d 440, 445 (2005) (quoting *Petty v. Transport, Inc.*, 276 N.C. 417, 426, 173 S.E.2d 321, 328 (1970)), *disc. review denied*, 360 N.C. 61, 621 S.E.2d 177 (2005). "To show causal relation, 'the evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation . . . .'" *Everett v. Well Care & Nursing Servs.*, 180 N.C. App. 314, 319, 636 S.E.2d 824, 828 (2006) (quoting *Gilmore v. Board of Education*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942)).

Defendants contend that the evidence does not support the following findings of fact of the Commission:

20. Plaintiff's left knee has continued to hurt since September 2006. Several weeks before May 2007, Plaintiff's right knee started to hurt more. By May 9, 2007, Plaintiff had twisted her right knee and felt a pop. Several days later, her knee popped again when her knee gave way while she was getting into her car.

21. Dr. Schutte was of the opinion, and the Full Commission finds as fact, that Plaintiff's overcompensation of her knees caused problems with Plaintiff's right knee. Dr. Schutte state[d] specifically during deposition: "I have no doubt that her right

knee was working hard[er] than her left knee, given that she has arthritis in her left knee and was favoring that knee.["] And Plaintiff testified that although she had no right knee problems prior to her work-related accident, she began to have right knee problems following the accident. Plaintiff stated at the hearing before the Deputy Commissioner: "[B]ecause I had tried to shelter the left knee so much, I had made my right knee and my right leg bear all the weight." Based upon a review of the record in this matter, the Full Commission finds that the greater weight of the evidence shows that Plaintiff's overcompensation of her right side more than likely caused, contributed to, or aggravated the underlying pathology in Plaintiff's right knee to the point that her right knee became symptomatic.

"The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson*, 265 N.C. at 433-34, 144 S.E.2d at 274 (citations omitted). However, the Commission's findings of fact may be set aside on appeal when there is a complete lack of competent evidence to support them. *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (citing *Saunders v. Edenton Ob/Gyn Ctr.*, 352 N.C. 136, 140, 530 S.E.2d 62, 65 (2000)).

The Commission's finding that plaintiff's right knee injury was causally related to the compensable left knee injury is based upon plaintiff's own self-diagnosis and the expert medical testimony of Dr. Schutte. "[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Because plaintiff's testimony is not adequate to establish medical causation, we focus solely upon Dr. Schutte's expert medical testimony. Such medical expert testimony is not sufficiently reliable to qualify as competent evidence on issues of medical causation when it is based merely upon speculation and conjecture. *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (quoting *Young*, 353 N.C. at 230, 538 S.E.2d at 915).

Plaintiff contends that Dr. Schutte's medical opinion was that her compensable left knee injury caused her right knee injury. This contention is not supported by Dr. Schutte's testimony. Dr. Schutte testified as follows:

**NALE v. ETHAN ALLEN**

[199 N.C. App. 511 (2009)]

Q. Let me ask you about this statement in the May 16th medical note. It says: "She started shifting her weight over the past month to the right knee following the injections." And she had problems with her left knee. Is shifting weight over something called over compensation?

. . .

Q. Is that a possible cause for an aggravation of any underlying diagnoses in the right knee to make them symptomatic?

A. Yes, it's possible.

. . .

Q. If I were to ask you that Miss Nale had the injury that we had talked about back in July of 2005. That if she did not have the right knee problems at that time, and did not have any right knee problems until about the time in March of 2007 or April of 2007 when she came to you for the injection of the left knee. And then reported to you in May 2007 that she had what sounded to be mechanical symptoms of the popping, the clicking and pain getting up from the knee from shifting her weight over to that knee.

If I were to ask you to assume that those subjective complaints of hers were credible and valid, do you have an opinion to a reasonable degree of medical certainty, again not to an absolute degree, but a reasonable degree as to whether there was a contribution in her right knee symptoms from her left knee injury.

. . .

A. *I have no doubt that her right knee was working harder than her left knee, given that she has arthritis in her left knee and was favoring that knee.* The finding, at the time that we scoped her knee was she had a plica, which is a band of scar tissue, which in her case, is another condition to wear away the scar tissue. The plica is not something that would form as a result of over activity on that knee, that's just one of those things that happens.

. . .

Q. And let me separate the other one. I think I just asked you this a second ago. If you assumed that she had not had right knee problems until the time frame that she had the left knee injection, and she started shifting her weight over, according to your medical records, and assuming that the Industrial

Commission would say that history was credible, is that the likely cause, at least by the history, that Miss Nale gave to you that of her right knee symptom?

. . .

A. I thought the history I had was that she had a twisting injury the Friday before I saw her.

(emphasis added).

"Although expert testimony as to the *possible* cause of a medical condition is admissible if helpful to the jury, it is insufficient to prove causation, particularly when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." *Holley*, 357 N.C. at 233, 581 S.E.2d at 753 (citations and quotations omitted). Dr. Schutte's answers to the above questions indicate that he believed plaintiff's right knee injury stemmed from a twisting injury and a plica. He stated the plica was not something that would develop due to over-activity. Plaintiff cites this Court to the portion of Dr. Schutte's testimony that: "no doubt that her right knee was working harder than her left knee" to support her assertion that her right knee injury stemmed from her favoring her left knee. However, when asked if this over-compensation could be an aggravating factor underlying the symptoms of plaintiff's right knee, Dr. Schutte only said it was possible. "Doctors are trained not to rule out medical possibilities no matter how remote; however, mere possibility has never been legally competent to prove causation." *Id.* at 234, 581 S.E.2d at 754 (citing *Young*, 353 N.C. at 233, 538 S.E.2d at 916). Dr. Schutte never provides a causal link, rising to a level above mere possibility, between plaintiff's compensable left knee injury and her right knee injury. "Although medical certainty is not required, an expert's 'speculation' is insufficient to establish causation." *Id.* (quoting *Young*, 353 N.C. at 233, 538 S.E.2d at 916).

Plaintiff had the burden of establishing that the right knee injury was the direct and natural result of the compensable left knee injury. This had to be shown through expert medical testimony. *Cannon*, 171 N.C. App. at 262, 614 S.E.2d at 445 (citations omitted). Plaintiff failed to meet this burden. Dr. Schutte's testimony was that the plica was *not* the result of over-activity of the right knee arising from the left knee injury. We are not persuaded by plaintiff's attempt to lift one sentence out of Dr. Schutte's answer, while ignoring the balance of his answer to the same question.

We also reject the Commission's attempt to establish causation based upon plaintiff's self-diagnosis of the cause of her right knee injury, and the temporal sequence of the two injuries. It is not for the Commission to render its own expert medical opinions. *Edmonds v. Fresenius Med. Care*, 165 N.C. App. 811, 818-19, 600 S.E.2d 501, 506 (2004) (Steelman, J., dissenting), *rev'd per curiam for reasons stated in dissent*, 359 N.C. 313, 608 S.E.2d 755 (2005).

## V. Temporary Total Disability

[3] In their second argument, defendants contend the Commission erred in awarding plaintiff temporary total disability payments for the period of time between 1 May 2006 and 28 December 2006. We remand this issue to the Commission for further findings of fact.

Defendants contest findings of fact numbers nineteen and twenty, and argue that these findings do not support Conclusion of Law number six, which states, "Plaintiff was totally disabled because of her injury for the 241 days between May 1, 2006, and December 28, 2006. N.C. Gen. Stat. § 97-29." They contend that plaintiff "cannot establish and has failed to satisfy her burden with respect to 'disability.'" We note the record reveals that this period of disability predated any injury to the right knee and is thus solely attributable to the left knee.

The Worker's Compensation Act defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2007).

In order to support a conclusion that plaintiff was disabled, the Commission must find:

(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment,

(2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and

(3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (citing *Watkins v. Motor Lines*, 279 N.C. 132, 181 S.E.2d 588

(1971)). Plaintiff bears the burden of proving both the extent and degree of her disability. *Brown v. S & N Communications, Inc.*, 124 N.C. App. 320, 329, 477 S.E.2d 197, 202 (1996) (citing *Watson v. Winston-Salem Transit Authority*, 92 N.C. App. 473, 475, 374 S.E.2d 483, 485 (1988)).

As to plaintiff's incapacity to earn wages, the Commission found:

15. Plaintiff worked during all periods in which her doctors allowed her to work. Both before and after May 1, 2006, Plaintiff continued to have the medical restrictions given to her by Dr. Smith and Dr. Bensen. She continued to work at Defendant-Employer even though her normal work activities exceeded those restrictions.

16. On May 1, 2006, Plaintiff voluntarily left Defendant-Employer's Charlotte location and moved to Charleston, South Carolina, to remarry. After the injury on July 14, 2005, Plaintiff states she began to shift her weight from her left side to her right side because of her left knee pain.

. . .

19. Between May 1, 2006, and December 28, 2006, Plaintiff received unemployment compensation while in South Carolina and looked for other work. She satisfied all of the job search requirements under the law for purposes of receiving unemployment compensation, but did not get hired. Plaintiff was capable of some work between May 1, 2006, and December 28, 2006, and made a reasonable effort to find other work during this period, but without success. On December 28, 2006, Plaintiff returned to work in Charleston, South Carolina.

Defendants argue that plaintiff has not satisfied the third prong of *Hillard* because she voluntarily chose to resign her position at Ethan Allen. We decline to discuss this argument because findings of fact sixteen and nineteen are in conflict as a matter of law.

If plaintiff voluntarily quit her employment with Ethan Allen in North Carolina, she could not be drawing unemployment from the State of North Carolina. N.C. Gen. Stat. § 96-14 (2007)[1]. Further, she

---

1. This statute has been amended by 2009 N.C. Sess. Laws ch. 301 (2009). This amendment does not take effect until 1 January 2010, thus not affecting the outcome of this case.

NALE v. ETHAN ALLEN

[199 N.C. App. 511 (2009)]

could not have quit her job in North Carolina on 1 May 2006 and immediately have begun collecting unemployment compensation from the State of South Carolina.

The record on this matter is not totally clear. It appears that plaintiff left the employ of Ethan Allen in North Carolina in February of 2006 and went to work at an Ethan Allen store in Charleston, South Carolina. Plaintiff lost this job when the store was bought out, and she was not retained as an employee. She then began drawing unemployment in South Carolina based upon her employment in Charleston on 1 May 2006.

It is not the role of the appellate courts to make findings of fact. *Bowen v. ABF Freight Sys., Inc.*, 179 N.C. App. 323, 330-31, 633 S.E.2d 854, 859 (2006). It is the role of the Industrial Commission to make findings of fact. *Id.* at 327, 633 S.E.2d at 857 (citations omitted). Based upon the findings made by the Commission, we are unable to decide the appellant's second argument. This case is remanded to the Commission for additional findings of fact resolving the conflicts in the Commission's Opinion and Award. Specifically, the Commission shall determine the date plaintiff left the employ of Ethan Allen in North Carolina, where and when she worked in South Carolina, and the reason for her termination in South Carolina.

[4] Defendants have failed to argue their remaining assignments of error in their brief, and they are thus deemed abandoned pursuant to Rule 28(b)(6) of the Rules of Appellate Procedure. N.C.R. App. P. 28(b)(6).

REVERSED IN PART, REMANDED FOR ADDITIONAL FINDINGS OF FACT IN PART.

Judges HUNTER, ROBERT C. and GEER concur.