An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-651

NORTH CAROLINA COURT OF APPEALS

Filed:  1 April 2014

BRETT ALLSBROOK,
Employee,
Plaintiff

 v.        From The North Carolina
           Industrial Commission
           I.C. No. W13767

ILLINOIS TOOL WORKS/WILSONART,
Employer,

BROADSPIRE,
Carrier,
Defendants


 Appeal by plaintiff from opinion and award entered 22 October 2012 by the North Carolina Industrial Commission.  Heard in the Court of Appeals 6 November 2013.


  *Brett M. Allsbrook, pro se, for plaintiff-appellant.*

  *Hedrick Gardner Kincheloe & Garofalo, LLP, by M. Duane Jones and Elias W. Admassu, for defendants-appellees.*


  DAVIS, Judge.


 Brett Allsbrook ("Plaintiff") appeals from the Opinion and Award of the North Carolina Industrial Commission ("the Full

Commission" or "the Commission") denying his workers' compensation claim against Illinois Tool Works/Wilsonart ("Defendant"). On appeal, Plaintiff primarily argues that the Commission failed to make sufficient findings of fact to support its determination that his injury was not a compensable injury by accident. After careful review, we affirm the Commission's opinion and award.

**Factual Background**

At the time of the hearing, Plaintiff was 52 years old. In November 2000, Plaintiff was hired by Defendant - a manufacturer of high-pressure decorative laminate and backer boards - as a packer, and in February 2008, he was reassigned to the position of saw helper. He continued to work in that position until February 2009. As a saw helper, Plaintiff's responsibilities included working in the finishing area and assisting saw operators in cutting material to specific measurements. While working for Defendant, Plaintiff used two different saws to cut laminate and backer boards, a Schelling saw and a Mereen-Johnson saw.

The Schelling saw is a newer saw and is computer-controlled, allowing employees to load the laminate while the saw automatically pushes and pulls the laminate through the machine to make the appropriate cuts. The Mereen-Johnson saw is an older saw that requires more physical force by the operator

than the Schelling saw and is used as a back-up to the Schelling saw. The Mereen-Johnson saw uses air pressure to help guide the laminate and backer boards through the cutting process. When using the Mereen-Johnson saw, two employees load the laminate or backer board and then push it to other employees who guide the laminate or backer board through the cutting process. After the cutting process is complete, an employee pushes the material to other employees who unload the material from the saw.

On 26 February 2009, Plaintiff was working with several other employees to cut five foot by ten foot by one inch backer boards with the Mereen-Johnson saw. In order to achieve the necessary cuts, two employees would pull the backer board onto the air table, cut the ends, and then push the backer board to Plaintiff. Plaintiff would then rearrange the backer board to cut the other end and push the backer board down the air table to other employees, who would then remove it from the waist-high air table. Plaintiff alleges that near the end of his shift on 26 February 2009, he was bent at the waist at approximately a 90-degree angle using the Mereen-Johnson saw, when he felt a pop in his chest.

On 27 March 2009, Plaintiff gave a recorded statement to Mollie Murphy, a representative of his employer's workers' compensation carrier. In this recorded statement, he stated the following, as captured in the Commission's finding of fact 7:

> Plaintiff indicated "We put in full size laminate which could be as large as 5 foot by 12 foot." Plaintiff further indicated that at the time of the alleged accident he was working on the Mereen-Johnson saw and that he had worked on that saw prior to February 26, 2009. When asked by Ms. Murphy, "Marine [sic] Johnson though has been in operation still and there are occasions that you work on it just like you work on the um . . . the newer model?" Plaintiff responded in the affirmative. Plaintiff indicated that boards he was working with at the time of the alleged accident measured 5 feet by 8 to 10 feet, less than the maximum size Plaintiff indicated he worked with. Plaintiff described the angle at which he pushed boards on the Mereen-Johnson saw as "awkward" in that he ended up leaning at almost a 90 degree angle due to the height of the table. However, this was the method Plaintiff normally used when pushing boards, and he stated with respect to the push in question that it was a normal push for him and that it was not uneven or any harder than he typically pushed.

After being treated by his employer's physician, Plaintiff sought treatment from Dr. Werner C. Brooks ("Dr. Brooks"), a board-certified orthopedic surgeon, on 11 March 2009. Plaintiff received treatment for A.C. joint and sternoclavicular joint strains and was ultimately diagnosed with a labral tear. On 22 May 2009, Dr. Brooks performed a right shoulder arthroscopy, acromioplasty, distal clavicectomy, and labral tendon repair on Plaintiff.

Plaintiff continued to complain of problems with his right shoulder and sternoclavicular joint following his treatment with

Dr. Brooks. On 27 July 2011, another orthopedic surgeon, Dr. Christopher L. Elder ("Dr. Elder"), examined Plaintiff. Dr. Elder diagnosed Plaintiff with chronic "right shoulder pain and mechanical symptoms status post arthroscopy with a labral repair and subachromial decompression, distal clavicle excision" and "continued right S.C. joint pain, swelling, and instability with manageable symptoms." Dr. Elder was also concerned that Plaintiff had a recurrent labral tear and scheduled a right shoulder arthroscopy for 9 September 2011 in order to make a diagnosis. Dr. Elder opined that Plaintiff's S.C. joint symptoms were related to his initial injury in February 2009 and that his current symptoms were related to the shoulder surgery performed by Dr. Brooks. Plaintiff has not worked for Defendant since April 2009.

On 14 June 2011, a hearing was held before Deputy Commissioner Keisha M. Lovelace. On 29 March 2012, the deputy commissioner entered an opinion and award denying Plaintiff's claim. Plaintiff appealed to the Full Commission on 19 June 2012. On 22 October 2012, the Full Commission entered its opinion and award affirming the deputy commissioner's decision. Plaintiff appealed the Commission's decision to this Court.

## Analysis

Our review of an Opinion and Award by the Industrial Commission is "limited to consideration of whether competent

evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008). With regard to the Commission's findings of fact, this Court's "duty goes no further than to determine whether the record contains any evidence tending to support the finding[s]." *Id.* (citation and quotation marks omitted). The findings of fact made by the Commission are conclusive on appeal if supported by competent evidence even if there is also evidence that would support a contrary finding. *Nale v. Ethan Allen*, 199 N.C. App. 511, 514, 682 S.E.2d 231, 234, *disc. review denied*, 363 N.C. 745, 688 S.E.2d 454 (2009). The Commission's conclusions of law, however, are reviewed *de novo*. *Gregory v. W.A. Brown & Sons*, ___ N.C. App. ___, ___, 713 S.E.2d 68, 74, *disc. review denied*, ___ N.C. ___, 719 S.E.2d 26 (2011).

A plaintiff is entitled to compensation for an injury under the Workers' Compensation Act "only if (1) it is caused by an accident, and (2) the accident arises out of and in the course of employment." *Pitillo v. N.C. Dep't of Envtl. Health & Natural Res.*, 151 N.C. App. 641, 645, 566 S.E.2d 807, 811 (2002). The plaintiff bears the burden of proving both elements of the claim. *Morrison v. Burlington Indus.*, 304 N.C. 1, 13, 282 S.E.2d 458, 467 (1981). Here, neither party disputes that

Plaintiff's injury arose out of and in the course of his employment. Rather, the sole issue on appeal is whether Plaintiff's injury occurred as a result of an "accident" within the meaning of the Workers' Compensation Act.

The terms "accident" and "injury" are separate and distinct concepts. *Gray v. RDU Airport Auth.,* 203 N.C. App. 521, 525, 692 S.E.2d 170, 174 (2010). An accident is "'an unlooked for and untoward event which is not expected or designed by the person who suffers the injury,'" that involves "'the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences.'" *Calderwood v. Charlotte-Mecklenberg Hosp. Auth.,* 135 N.C. App. 112, 115, 519 S.E.2d 61, 63 (1999) (quoting *Adams v. Burlington Indus.,* 61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983)), *disc. review denied,* 351 N.C. 351, 543 S.E.2d 124 (2000).

"If an employee is injured while carrying on usual tasks in the usual way the injury does not arise by accident." *Gunter v. Dayco Corp.,* 317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986). However, "when an interruption of the employee's normal work routine occurs, introducing unusual conditions likely to result in unexpected consequences, an accidental cause will be inferred. The essence of an accident is its unusualness and unexpectedness . . . ." *Gray,* 203 N.C. App. at 525, 692 S.E.2d

at 174 (2010) (internal citation and quotation marks omitted). In addition, "once an activity, even a strenuous or otherwise unusual activity, becomes a part of the employee's normal work routine, an injury caused by such activity is not the result of an interruption of the work routine or otherwise an 'injury by accident' under the Workers' Compensation Act." *Bowles v. CTS of Asheville*, 77 N.C. App. 547, 550, 335 S.E.2d 502, 504 (1985).

Among the findings of fact made by the Commission were the following:

> 3. As a saw helper, Plaintiff worked in the finishing area assisting saw operators in cutting material to specific measurements. Defendant-Employer uses two different saws to cut laminate and backer boards, a Schelling saw and a Mereen-Johnson saw.
>
> . . . .
>
> 5. The Mereen-Johnson saw is an older saw than the Schelling saw. Cutting materials with the Mereen-Johnson saw is more physically demanding than with the Schelling saw. The Mereen-Johnson saw uses air pressure to help guide the laminate and backer boards through the cutting process, however, the saw operators and saw helpers have to use more effort to push and pull the material through the Mereen-Johnson saw. Defendant-Employer cuts 5 foot by 10 foot pieces of laminate weighing approximately 18 to 19 pounds and 5 foot by 10 foot pieces of backer board weighing at least 100 pounds and up to approximately 400 pounds. When using the Mereen-Johnson saw, two employees load the laminate or backer board, and then push it to other employees who guide the laminate or backer board through the cutting

process. After the cutting process is complete, an employee pushes the material to other employees who unload the material from the saw. The Mereen-Johnson saw is used as a "back-up" saw to help in times of heavy work-loads or to cut backer boards and other items not requiring the same level of precision and accuracy as laminate.

6. On February 26, 2009, Plaintiff was working with several other employees to cut 5 foot by 10 foot by 1 inch thick backer boards on the Mereen-Johnson saw. In order to achieve the necessary cuts, two employees pulled the backer board onto the air table, cut the ends or sides, and then pushed the backer board to Plaintiff. Plaintiff then rearranged the backer board to cut the other end and then pushed the backer board down the air table to other employees who removed it from the air table and placed it on a pallet. To push the backer board after making his cuts, Plaintiff would lean over the air table, which was waist-high, bend at approximately a 90 degree angle, and push the backer board. Plaintiff alleges that, while pushing a board near the end of his shift on February 26, 2009, he felt a pop in his chest.

7. On March 27, 2009, Plaintiff gave a recorded statement to Mollie Murphy from Defendant-Carrier. When describing his position to Ms. Murphy, Plaintiff indicated "We put in full size laminate which could be as large as 5 foot by 12 foot." Plaintiff further indicated that at the time of the alleged accident he was working on the Mereen-Johnson saw and that he had worked on that saw prior to February 26, 2009. When asked by Ms. Murphy, "Marine (sic) Johnson though has been in operation still and there are occasions that you work on it just like you work on the um...the newer model?" Plaintiff responded in the affirmative. Plaintiff indicated that boards he was working with at the time of the alleged

accident measured 5 feet by 8 to 10 feet, less than the maximum size Plaintiff indicated he worked with. Plaintiff described the angle at which he pushed boards on the Mereen-Johnson saw as "awkward" in that he ended up leaning at almost a 90 degree angle due to the height of the table. However, this was the method Plaintiff normally used when pushing boards, and he stated with respect to the push in question that it was a normal push for him and that it was not uneven or any harder than he typically pushed. Relative to the circumstances surrounding his alleged accident, Plaintiff went on to state, "So um again nothing out of the ordinary."

8. Plaintiff testified at the hearing before the Deputy Commissioner that at the time the alleged accident occurred, he pushed the backer board in the same manner he normally did when working on the Mereen-Johnson saw. Plaintiff contended, however, that he did not use the Mereen-Johnson saw on a regular basis, and that at times the saw went unused for months at a time.

9. Plaintiff's testimony about the frequency with which the Mereen-Johnson saw was used is in direct contradiction to the testimony of Harold Whitted and Charles Dennis Clark. Mr. Whitted is Plaintiff's former supervisor and no longer works for Defendant-Employer. He testified that using the Mereen-Johnson saw in the manner Plaintiff testified he did on February 26, 2009 was a normal job duty for an employee in Plaintiff's position. Mr. Clark, who is currently the manager for Defendant-Employer's Fletcher facility, was previously the manager of the pressing department, which included the finishing area where Plaintiff worked. He testified that Plaintiff used both the Schelling saw and the Mereen-Johnson saw on a regular basis, and that the duties Plaintiff testified he was performing at the time he was injured were consistent with Plaintiff's

normal job duties.

. . . .

15. The Full Commission gives greater weight to the testimony of Mr. Whitted and Mr. Clark and finds, based upon the preponderance of the evidence in view of the entire record that, at the time his injury occurred on February 26, 2009, Plaintiff was working with other employees to cut material which was consistent in size with the materials with which he normally worked. Plaintiff's use, along with the other employees, of the Mereen-Johnson saw was also not unusual, nor was the manner in which he pushed the board any different from the manner in which Plaintiff typically pushed boards when working on the Mereen-Johnson saw. As such, the Full Commission finds that Plaintiff was engaged in his work duties in his usual and . . . customary manner, and there was no interruption of his normal work routine likely to result in unexpected consequences.

Based on these factual findings, the Commission issued the following conclusions of law:

1. Under the North Carolina Workers' Compensation Act, an injury arising out of and in the course of employment is compensable only if it is caused by an "accident" and the claimant bears the burden of proving an accident has occurred. An accident is an unlooked for and untoward event which is not expected or designed by the person who suffers the injury. An accident therefore involves the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences.

2. In the instant case, Plaintiff has failed to establish that he sustained an injury by accident within the meaning of the

Act on February 26, 2009. N.C. Gen. Stat. § 97-2(6). Plaintiff was performing his regular job in his normal, usual manner at the time of the injury. Although Plaintiff may have assumed an awkward body position when pushing the heavy board, the position, and the size of the board were not unusual, nor was the use of the Mereen-Johnson saw to cut the board. Plaintiff had previously worked with materials of the same size, as evidenced by his recorded statement, and, per his statement, there was nothing unusual about the push he made at the time he felt the pop and the body position resulting from the push saw was the body position he normally assumed when pushing boards on the Mereen-Johnson saw.

As a result of these findings of fact and conclusions of law, the Commission ultimately determined that "Plaintiff failed to establish that he sustained an injury by accident within the meaning of the [Workers' Compensation] Act."

In arguing for the reversal of the Commission's decision, Plaintiff claims there is "no evidence" supporting the Commission's finding that Plaintiff was not injured by accident and that he was instead carrying out his regular job duties in his usual manner. Plaintiff attempts to discredit the testimony of Mr. Harold Whitted ("Mr. Whitted") and Mr. Dennis Clark ("Mr. Clark"), both of whom testified that the use of the Mereen-Johnson saw in the manner described by Plaintiff was a normal job duty for him, by citing the witnesses' failure to produce a log book regarding the number of hours and number of times the

Mereen-Johnson saw was used in order to corroborate their testimony.

In making this argument, Plaintiff asks us to substitute our own views of the witnesses' credibility for those of the Commission. This we cannot do. Our Supreme Court has made clear that:

> (1) the Full Commission is sole judge of the weight and credibility of the evidence, and (2) appellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.

*Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000).

Moreover, when making determinations on credibility, the Industrial Commission is not obligated to explain why it deemed certain evidence credible or not credible. *Id*. This is so because

> [r]equiring the Commission to explain its credibility determinations and allowing the Court of Appeals to review the Commission's explanation of those credibility determinations would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one witness over another or believes one piece of evidence is more credible than another.

*Id.*

Here, the Commission's findings of fact make clear that it deemed Mr. Whitted's and Mr. Clark's testimony to be credible. In finding of fact 15, the Commission stated:

> 15. The Full Commission gives greater weight to the testimony of Mr. Whitted and Mr. Clark and finds, based upon the preponderance of the evidence in view of the entire record that, at the time his injury occurred on February 26, 2009, Plaintiff was working with other employees to cut material which was consistent in size with the materials with which he normally worked. Plaintiff's use, along with the other employees, of the Mereen-Johnson saw was also not unusual, nor was the manner in which he pushed the board any different from the manner in which Plaintiff typically pushed boards when working on the Mereen-Johnson saw. As such, the Full Commission finds that Plaintiff was engaged in his work duties in his usual and . . . customary manner, and there was no interruption of his normal work routine likely to result in unexpected consequences.

Competent evidence supports this finding. Mr. Whitted, Plaintiff's former supervisor, testified that any employees who worked with the saws "could work on either saw at you know, given times." He also responded affirmatively when asked if both saws were rotated in their use by Plaintiff's department. Mr. Whitted explained that

> [t]he initial saw crew . . . could be asked to work on either saw. Primarily the Schelling saw, that was our primary saw, but depending on what needed to be cut or if we needed assistance from other people, then we'd try to split the saw personnel up to work with the less experienced people, and

so they could work on either saw at, you know, given times.

Similarly, Mr. Clark, the manager of the Fletcher facility, also testified in the affirmative when asked if he agreed that both the "Schelling and the Mereen-Johnson saws were used on a regular basis by the staff, including Plaintiff." Mr. Clark further testified that both the physical activity of "pushing and pulling" and the use of both saws was consistent with what the "normal job involved for [Plaintiff] and other people in that department."

This testimony by Mr. Whitted and Mr. Clark serves as competent evidence that directly supports the Commission's finding that, at the time of the injury, Plaintiff was performing his work duties in his usual and customary manner. This, in turn, supports the Commission's ultimate conclusion that Plaintiff failed to show that he sustained an injury by accident within the meaning of the Workers' Compensation Act.

Plaintiff also contends that his statements that he had worked on the Mereen-Johnson saw previously did not establish any "regularity" and that the Commission erred in finding that this was part of his normal job duties. However, Plaintiff admits in his brief that "it is clear from the preponderance of the evidence that [he] had previously worked on the Mereen-

Johnson saw." This admission by Plaintiff simply adds to the competent evidence supporting the Commission's determination.

## Conclusion

For the reasons stated above, the Opinion and Award of the Full Commission is affirmed.

AFFIRMED.

Judges ELMORE and McCULLOUGH concur.

Report per Rule 30(e).